764 A.2d 503 (2001)
336 N.J. Super. 270
In the Matter of the GUARDIANSHIP OF Nadia JORDAN and Joan Jordan.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 2000.
Decided January 17, 2001.
*504 Lisa B. Landsman, Deputy Attorney General, argued the cause for appellant, Division of Youth and Family Services, (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel, Ms. Landsman, on the brief).
S. Daniel Hutchison argued the cause for respondent Robert Jordan.
John P. Kopesky, Philadelphia, PA, argued the cause as guardian for Nadia and Joan Jordan, (Sheller, Ludwig & Badey, attorneys; Mr. Kopesky, on the brief).
Before Judges KING, COBURN and AXELRAD.
The opinion of the court was delivered by KING, P.J.A.D.

I
In this caption and opinion, we use fictitious names. The Division of Youth and Family Services (DYFS) appeals the trial judge's decision which ordered the return of the minor child, Joan, to her birth father's custody (defendant). Joan, now age nine, and her sister Nadia, now age thirteen, were removed from their father's custody following alleged abuse of Nadia by her father. These allegations included hitting Nadia with a belt, kicking her, and making her do pushups. The two sisters were removed from the household and placed in foster care together.
At the conclusion of two years of foster care, DYFS decided to pursue termination of the father's parental rights and seek adoption of the girls by their foster mother. Subsequent to DYFS's decision, the defendant birth father surrendered his parental rights to Nadia, but continued to maintain visits with Joan and seeks the return of Joan to the parental household. Counseling and psychological evaluations ensued, and eventually a trial.
*505 The trial judge ruled that defendant's surrender of his parental rights to Nadia's custody was knowing, voluntary, and binding. However, the trial judge denied DYFS's application for termination of parental rights as to Joan, and ordered her return to her father. DYFS moved for a stay which we granted pending accelerated argument on December 20, 2000. The father does not cross-appeal from the termination decision as to Nadia.
DYFS asserts that the judge's decision as to Joan was against the weight of the evidence, even recognizing its clear and convincing burden of proof in termination of parental rights cases. We disagree and affirm the denial of termination of the birth-father's parental rights for the reasons given by Judge Thomas S. Smith, Jr., in his comprehensive 35-page written opinion. We find that the record amply supports his decision, given DYFS's heavy constitutional burden of proof in the matter. See Santosky v. Kramer, 455 U.S. 745, 748-49, 753-70, 102 S.Ct. 1388, 1391-93, 1394-1403, 71 L.Ed.2d 599, 603, 606-17 (1982). This substantial burden of proof, plus our historic appellate respect for the fact-finder, compels our affirmance in this very troublesome case. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84, 323 A.2d 495 (1974); see State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999); In re Taylor, 158 N.J. 644, 731 A.2d 35 (1999); State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964).
On the issue of termination of parental rights as to Joan, the judge referred to N.J.S.A. 30:4C-15 and 15.1(a) and New Jersey Div. of Youth and Family Serv. v. A.W., 103 N.J. 591, 512 A.2d 438 (1986). Both the case law and the statute require satisfaction of the "best interests of the child" test, by clear and convincing evidence, before termination of parental rights can occur. The four-prong test requires DYFS to prove:
(1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his foster parents would cause serious and enduring emotional or psychological harm to the child;
(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1.]
The judge determined that testimony failed to reveal allegations of abuse involving Joan. "In fact Mr. Jordan has continued visitation with Joan without any incident." In analyzing the testimony offered by Dr. Gruen, Dr. Musetto, and witnesses on behalf of DYFS, the judge decided that DYFS failed to meet its burden.
While there is clear proof as to harm to Nadia, the evidence presented as to actual or future harm to Joan is speculative at best. The testimony indicates that Mr. Jordan has maintained a constructive and safe relationship with Joan except for the time he was in Texas and shortly thereafter. He continues to exercise unsupervised visitation with Joan on a regular basis without incident that would lead this court to believe that he has harmed Joan or would do so in the future.
The court is well aware of the testimony of Dr. Gruen as to what may happen in the future. DYFS has not proven however, both current and future harm to Joan's health and development resulting from the parental relationship as specified *506 in K.H.O., [161 N.J. 337, 736 A.2d 1246 (1999)].
As to the second prong of the test, the judge stated that DYFS failed to prove "by clear and convincing evidence any harm to Joan on the part of Mr. Jordan." The judge also determined that the defendant and his second wife offered safe housing on the return of Joan to her father and the blending of their families. Judge Smith found DYFS had met the third prong of the test by diligently referring defendant for evaluations, counseling and facilitating visitation between Joan and her father.
The fourth prong proved the most troublesome for the judge to decide: "That prong requires the court to address the issue of whether termination will do more harm than good. The court must also consider the permanency plan presented in its analysis of this prong." Here Nadia and Joan's close sibling relationship created the dilemma. Joan depends considerably upon Nadia; both experts testified concerning the harm Joan would suffer should she be separated from Nadia. Bonding had also been established with the girls' foster mother, Ms. Franks; however, she was no longer part of the equation due to serious illness. No evidence suggested a bond between the girls and Franks's nephew, Brent, the newly-proposed adopting parent. Both experts did acknowledge the bond between Joan and her father. Hence, the judge concluded the evidence clearly demonstrated that bond "outweighs any relationship with the [Franks] nephew."
The two experts disagreed as to whether defendant would or could nurture a relationship between the sisters, if Joan returned to defendant's custody. Gruen doubted defendant would encourage the siblings' relationship. Musetto believed defendant would foster the bond between the sisters. The latter was consistent with defendant's assertion: he resented DYFS but said "he would never break up the relationship between Joan and Nadia."
Based upon the totality of the circumstances, the judge ruled that terminating defendant's parental rights would subject Joan to the greater harm.
Both of the experts testified as to the bond between Joan and her father. The foster mother is no longer a potential adoptive parent and Joan is no longer being cared by her due to her illness. There was no evidence of bonding between Joan and Ms. Franks's nephew. The permanency plan for Joan cannot outweigh the existence of her bonding to her father. Concerns as to the bonding between the two siblings can be addressed through extensive visitation between the two that can be arranged through Mr. Jordan and DYFS or the adoptive parent. The court is taking Mr. Jordan at his word that he would not break up the relationship between Joan and her sister.
Although the judge regretted having to separate the two sisters, understandably he found that DYFS failed to meet its burden to satisfy the four prongs by clear and convincing evidence and ordered Joan's return to her father's custody. These findings and conclusions are amply supported by the record, especially under the enhanced burden on the agency to carry the case by "clear and convincing evidence," which standard "strikes a fair balance between the rights of the natural parents and the State's legitimate concerns." Santosky v. Kramer, 455 U.S. at 769, 102 S.Ct. at 1403, 71 L.Ed.2d at 617.

II
The judge made no provision in his final order of October 5, 2000 to insure the continuing relationship of the two sisters. We remand the case to Judge Smith and ask him to conduct a prompt hearing and do whatever he can by way of judicial supervision and order to nurture this relationship, and to continue to follow the case, even though he has been transferred to the Law Division. This could include counseling, therapy or other measures. See generally Matter of Baby M., 109 N.J. *507 396, 463-67, 537 A.2d 1227 (1988), for the principles which should guide the judge "in this unique situation." Id. at 467, 537 A.2d 1227.
DYFS claims this solution is impractical because Nadia's prospective adopting parent may not cooperate. If this is so, perhaps nothing can be done to foster the sibling relationship. But the possible non-cooperation of Nadia's potential adopting parent is no reason to tip the scales in favor of terminating the father's parental rights.
DYFS also claims that the father may refuse to cooperate in fostering visitation and a continuing relationship between Nadia and Joan. If this occurs, and DYFS can document such intransigence on the father's part, DYFS should seek leave to reopen this termination case, and seek immediate custody of Joan. If such an application is made in good faith, the judge should entertain the termination application anew, rely on the existing record, and hear further evidence bearing on the four-part test for termination, including the father's lack of cooperation in fostering the sibling relationship, which is clearly in Joan's best interest.
Finally, we wish to thank Mr. Hutchison and Mr. Kopesky for their to-date uncompensated service in this case, which service is greatly appreciated by the court and is rendered in the best traditions of the Bar of this State. We hope that the fairly recent amendments to N.J.S.A. 30:4C-15.4; L. 1999, c. 53, § 54 and L. 1999, c. 213, § 1 will permit compensation to them for their excellent service to the court and to the interests of justice.
The stay is dissolved and the judgment is affirmed, as modified, and the case is remanded to Judge Smith to proceed with implementing appropriate visitation.