# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3688-22

NEW JERSEY DIVISION OF
CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

L.C.R.,

      Defendant-Appellant/
      Cross-Respondent,

and

R.A.R.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHP OF M.I.R.,
A.R.R., and M.C.R., minors,

and

L.G.R., a minor,

      Cross-Appellant.

Submitted October 7, 2025 – Decided November 7, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FG-13-0026-22.

Jennifer N. Sellitti, Public Defender, attorney for appellant/cross-respondent L.C.R. (Beth Anne Hahn, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent Division of Child Protection and Permanency (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor M.I.R. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Jennifer M. Sullivan, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor A.R.R. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor/cross-appellant L.G.R. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Damen J. Thiel, Designated Counsel, on the brief).

A-3688-22

PER CURIAM

Defendant L.C.R. (Lucy)[1] appeals Family Part orders terminating her parental rights to three of her four children. The orders were issued following a four-day guardianship trial and a subsequent remand to address a change in circumstances involving the placement of one of the children. After reviewing the record in light of the governing legal principles, we affirm the trial court's determination that the Division of Child Protection and Permanency (Division) proved by clear and convincing evidence all four prongs of the statutory best interests test.

I.

We presume the parties are familiar with the pertinent facts and procedural history, which we need only briefly summarize. Lucy has four children: Molly (born July 2011); twins Amy and Luke (born October 2012); and Max (born November 2014).

---

[1] We use pseudonyms for all parties to maintain the confidentiality of these proceedings. R. 1:38(d). We rely on the pseudonyms used in defendant's brief.

A-3688-22

The family has a lengthy history of involvement with the Division, including the first Dodd[2] removal in December 2012. The underlying neglect case stems from two subsequent Division removals occurring in June 2019 and October 2020. In June 2019, the children were removed due to reports that they were passengers in a hit-and-run accident in a car driven by Lucy's boyfriend, Mark; had slept overnight in the car; were unsupervised outside the home; and were absent from school without excuse. Additionally, police found drug paraphernalia in the car and Lucy's home. The second removal occurred in October 2020, when, following reports that Lucy did not pick the children up from a sleepover the night before, police found heroin and drug paraphernalia in Lucy's home.

On October 5, 2020, the Division filed a verified complaint for the care and custody of the children. The court granted the Division's application, and the children were placed in the care of Tonya, Lucy's cousin, where they remained during the course of the guardianship proceedings. Lucy and Tonya have a hostile relationship. The court granted Lucy supervised visitation with the children, which continued throughout these proceedings.

---

[2] A "Dodd removal" is an emergency removal of a child from the custody of a parent without a court order, as authorized by N.J.S.A. 9:6-8.29, a provision included within the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82.

On July 23, 2021, the Division filed a complaint seeking to terminate the parental rights of Lucy and Ryan, the children's biological father, to free the children for adoption by Tonya and her husband. The guardianship trial was convened over the course of four non-consecutive days in March and April 2023.

On June 30, 2023, the court entered an order of guardianship to Tonya, terminating Lucy's and Ryan's[3] parental rights to all four children. The trial court issued a written opinion on July 27, 2023, explaining the reasons for its conclusion that the Division established the four prongs for termination under N.J.S.A. 30:4C-15.1(a). The court made credibility findings, concluding that the testimony presented by the Division, including expert testimony, was credible. Defendant presented no witnesses at trial.

The court found, by clear and convincing evidence, that with respect to the first prong of the four-part best interests test, the children's safety, health, and development have and will continue to be endangered by the parental relationship. The court concluded that Lucy "failed to sufficiently and sustaina[bly] resolve the issues that led to the multiple removals." In reaching that conclusion, the court noted her substance abuse history and highlighted her

---

[3] During the guardianship trial, Ryan surrendered his parental rights and is not a party to this appeal.

A-3688-22

decisions with respect to romantic partners that were "to the detriment of the health, safety, and wellbeing of her children." The court found that after each removal, Lucy complied with services and achieved sobriety, only to revert to her old behavior, resulting in the children having to be removed again. The court also found the children felt unsafe in Lucy's care.

With respect to the second prong, the court determined that the Division proved that Lucy was unwilling and unable to remedy the issues that led to the children's removal and that delaying permanency would further harm the children. The court credited Lucy for her periodic compliance with the Division, her completion of parenting classes, and her progress in substance abuse treatment. The court nonetheless found that she "has continuously been unable to eliminate the harms that put her children at risk." The court highlighted that she repeatedly placed her own needs and her boyfriend's needs above the needs of the children, citing as an example that she had cancelled a visit with the children to spend time with Mark.

With respect to the third prong, the court determined that the Division made reasonable efforts to provide services to both parents, including supervised visits, various evaluations, counseling referrals, and drug testing. The court

A-3688-22

concluded that the failure to achieve reunification was due to Lucy's failure to make sufficient progress.

The court also concluded with respect to the third prong that there were no alternatives to termination. The court found that Tonya had made an informed decision that she preferred adoption to kinship legal guardianship (KLG) based on her view that adoption would provide the children with closure and security, whereas KLG would leave the children open to uncertainty and continued litigation. The court also noted Tonya's willingness to facilitate visitation.

Finally, the court found that prong four also supported termination, concluding that termination would not do more harm than good to the children. In reaching this conclusion, the court accepted the Division's expert's evaluation. The court also noted that none of the children wanted to be around Mark and expressed a desire for Lucy to end her relationship with him, yet the evidence presented demonstrated "reasonable suspicions" that Lucy was still living with and involved with Mark. Although the court credited Lucy's progress and her "resilience" throughout the Division's involvement, it ultimately concluded that reunification was not in the children's best interests as there was a strong likelihood of future removal. The court added that Lucy could not care for the

A-3688-22

children on her own, did not have a sufficient support system to assist her, and could not be relied upon to perform the regular and expected functions of care and support or provide stability for her children.

The judgment of guardianship terminating Lucy's parental rights to all four children was entered in June 2023. Lucy subsequently appealed and Luke filed a cross-appeal in support of his mother's appeal. In November 2023, while the appeal was pending, the Division removed Max from Tonya's home and placed him with his maternal grandfather, G.B. We granted Lucy's application for a limited remand to address this development.

Following a remand hearing, on June 7, 2024 the court entered an amended order of guardianship and termination of parental rights for Molly, Amy, and Luke. The court issued a separate written opinion on June 14, 2024 concluding that Max's change in placement did not impact its findings with respect to the best interests standard.

Specifically, the court found that Max's change in placement did not alter its earlier finding that there were no viable alternatives to termination of parental rights. The court on remand also reaffirmed its prior finding that termination would not do more harm than good. The court referred to the expert's opinion that disruption in placement would be detrimental to the older children, would

exacerbate their cognitive and emotional symptoms, and impair their overall functioning. The court acknowledged that the children were impacted by Max's removal but agreed with the Division's expert that this did not alter their need for permanency and stability.

Accordingly, in June 2024, the trial court issued an amended judgment of guardianship, affirming the termination of parental rights with respect to Molly, Amy, and Luke. The court dismissed Max from the guardianship proceeding and approved a permanency plan of kinship legal guardianship for him with G.B.

This appeal followed. Lucy argues the trial court erred in its assessment of the N.J.S.A. 30:4C-15.1(a) factors by overlooking her maintained sobriety and stabilized housing, by not adequately exploring alternatives to termination, by failing to consider Tonya's shortcomings when assessing whether reunification would result in more harm than good, and by failing to consider how the children's change in placement would impact their ability to maintain sibling contact in the future. Luke's cross-appeal joins Lucy's first three arguments.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. The scope of appellate review in a termination of parental rights

case is limited. N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). "Appellate courts must defer to a trial judge's findings of fact if supported by adequate, substantial, and credible evidence in the record." Ibid. The trial court's determination of the underlying facts and the conclusions flowing therefrom are afforded deference unless the court "went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007). A reviewing court must also defer to the trial court's credibility determinations and to its expertise in the field of domestic relations. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). As a result, a trial court's factual findings should not be disturbed by an appellate court "unless they are so wholly unsupportable as to result in a denial of justice." In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002). However, the trial court's interpretation of the law and legal findings are reviewed pursuant to a de novo standard. Ibid.

Parents have a constitutionally protected right to raise their children. N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 447 (2012); N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 599 (1986). However, in some circumstances, a parent's rights must yield to the State's parens patriae obligation to protect a child from physical or emotional harm. F.M., 211 N.J. at 447. Thus,

the State has limited power to terminate parental rights to protect the welfare of the children "in circumstances where the parent is unfit, or the child has been harmed," N.J. Div. of Child Prot. & Permanency v. D.C.A., 474 N.J. Super. 11, 24 (App. Div. 2002), and when such action is in the best interests of the child, A.W., 103 N.J. at 599, 602-03.

To terminate parental rights, N.J.S.A. 30:4C-15.1(a) requires that the Division establish:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside of the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

The Division must prove each of the four elements of the best interests of the child test by clear and convincing evidence. N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 506 (2004). The four prongs "are not discrete and separate;

they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." In re: Guardianship of K.H.O., 161 N.J. 337, 348 (1999).  The court should only sever a parent's relationship with their child when the "proof of parental unfitness is clear." F.M., 211 N.J. at 453.

When the court evaluates the statutory factors, it should emphasize the child's need for a permanent and stable home "without undue delay." In re Guardianship of D.M.H., 161 N.J. 365, 385 (1999) (citing K.H.O., 161 N.J. at 356-58).  It should thus determine "not only whether the parent is fit, but also whether he or she can become fit within time to assume the parental role necessary to meet the child's needs." N.J. Div. of Youth & Fam. Servs. v. R.L., 388 N.J. Super. 81, 89 (App. Div. 2006).

III.

We first address Lucy's contention that the trial court erred in its assessment of the first two prongs of the bests interests test, codified in N.J.S.A. 30:4C-15.1(a)(1) and (2).  She argues the court improperly focused on her past addiction and housing instability, both of which she claims to have addressed.

She also contends the court improperly concluded the children felt unsafe in her care.[4]

Luke does not dispute the court's finding as to prong one, but argues the court erred in finding prong two—that Lucy was unwilling or unable to eliminate harm—given her progress. He seeks reunification, or in the alternative, KLG with the resource parents so he can maintain his relationship with Lucy.

The first two prongs, N.J.S.A. 30:4C-15.1(a)(1) and (2), constitute the "harm requirement" and overlap. N.J. Div. of Child Prot. & Permanency v. T.D., 454 N.J. Super. 353, 380 (App. Div. 2018) (quoting D.M.H., 161 N.J. at 379). "Therefore, 'evidence that supports one informs and may support the other as part of the comprehensive basis for determining the best interests of the child.'" Ibid. (quoting D.M.H., 161 N.J. at 379). As to prong one, "[w]hen the condition or behavior of a parent causes a risk of harm, such as impermanence of the child's home and living conditions, and the parent is unwilling or incapable of obtaining appropriate treatment for that condition, the first subpart of the statute has been proven." N.J. Div. of Youth & Fam. Servs. v. H.R., 431 N.J. Super. 212, 223 (App. Div. 2013) (citing F.M., 211 N.J. at 450-51).

---

[4] It bears noting that Lucy does not seek reunification, but rather reversal of the termination decision and remand for an alternative placement plan for the children, with all the children remaining in their current placements.

A-3688-22

Lucy contends the court erred in weighing her substance abuse and housing instability against her, arguing that she has been sober since July 2021, and has maintained stable employment and housing. However, the court's finding with respect to harm was not based solely on substance abuse and housing instability but rather on a confluence of factors, including her continued cohabitation with Mark, her non-compliance with all recommended services, her overall history with the Division, her poor decision making and lack of insight, and the adverse impact of all these circumstances on the children, particularly their three removals. The law is well-settled that consideration of the "cumulative effect, over time, of harms arising from the home life provided by the parent" is appropriate when assessing prong one. M.M., 189 N.J. at 289; see also P.P., 180 N.J. at 506 ("Rather than focusing on a single or isolated harm, the standard may be triggered by an accumulation of harms over time") (citing K.H.O., 161 N.J. at 348). We add that a court may consider "a parent's association with third-parties" and whether "those associations harm[ed] the child." M.M., 189 N.J. at 289. This includes a parent's failure to protect the child from abuse and/or witnessing domestic violence in the home. N.J. Div. of Child Prot. & Permanency v. D.C.A., 256 N.J. 4, 15, 28 (2023) (prong one satisfied based on numerous domestic violence incidents in the home, including

14

in the presence of the children, which threatened their health, safety, and development); N.J. Div. of Youth & Fam. Servs. v. B.G.S., 291 N.J. Super. 582 (App. Div. 1996) (prong one satisfied by mother's inability to care for the child and her failure to protect him from her boyfriend).

Further, the court's finding on prong one also was based on the length of the children's removal from the home, and the Division's involvement with the family for approximately ten years. A child's lack of permanency based on prolonged and repeated placements can constitute harm sufficient to satisfy N.J.S.A. 30:4C-15.1(a)(1). N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 113 (App. Div. 2004). Here, the older children experienced three removals, and, at the time of the guardianship hearing, had resided with Tonya for six out of the past ten years.

In sum, there is adequate support for the trial court's finding that the repeated removals adversely impacted the children, insofar as they all were diagnosed with "adjustment disorder associated with trauma." We thus conclude there was sufficient credible evidence to support the court's finding under prong one that Lucy's actions harmed the children.

We likewise are unpersuaded by Lucy's contentions with respect to the second prong. As noted, the harms identified by the court include Lucy's

substance abuse, past domestic violence in the home, poor parental judgment, housing instability, and inability to meet the children's needs, all of which created an ongoing risk of removal. We acknowledge that Lucy appears to have eliminated or at least ameliorated some of these harms by her progress in treatment. Cf. Matter of A., 277 N.J. Super. 454, 469 (App. Div. 1994) (noting that a parent can demonstrate elimination of harm from their substance abuse by engaging in drug counseling, remaining drug free, and engaging in other related services). Aside from her progress in substance abuse treatment, the record also shows she obtained housing. We nonetheless conclude the trial court did not abuse its discretion in finding that she could not continually and consistently provide a safe and stable home for the children, especially considering her cohabitation with Mark. We decline to substitute our judgement for the trial court's judgment with respect to the factors that placed the children at risk. We add that the trial court acted well within its discretion in accepting the opinion of the Division's expert that Lucy has yet to show that she consistently is able to care for the children and meet their needs on a daily basis.

Nor are we persuaded by Lucy's contention that the children never felt unsafe in her care. The record includes statements where the children described

16

witnessing incidents that put their safety at risk, including domestic violence in the home and Mark's physical abuse.

IV.

We turn next to Lucy's contention that the trial court erred in its assessment of the third prong, N.J.S.A. 30:4C-15.1(a)(3), by failing to adequately consider alternatives to termination. Luke relatedly argues that Tonya's testimony revealed a misunderstanding of the differences between KLG and adoption. He also argues that the court overstepped its role when it attempted to remedy deficiencies in the record. We see no abuse of discretion in the court's finding that there were no realistic alternatives to termination at the time of the guardianship hearing considering the children's prolonged placement with Tonya and her unwillingness to accept KLG.

We note that in 2021, the Legislature amended the KLG statute, emphasizing the need to protect and preserve parental rights. See M.M. v. Dep't of Child. & Fams., 479 N.J. Super. 471, 480 (App. Div.), cert. denied, 259 N.J. 301 (2024). Our Supreme Court has held that these amendments have limited impact, however, on the termination of parental rights best interests test, altering only N.J.S.A. 30:4C-15.1(a)(2)—its prior language permitted consideration of harm from separating a child from his or her resource parent. D.C.A., 256 N.J.

17

at 24-25 (citing A. 5598/S. 3814 (L. 2021, c. 154)).  Consequently, the emphasis on kinship care is not determinative when assessing whether the trial court adequately considered alternatives to termination under N.J.S.A. 30:4C-15.1(a)(3).

Here, the Division complied with the Legislature's intent when it placed the children with a relative, Tonya, during all three removals.  N.J.S.A. 9:6-8.30(a).  But placement with a suitable relative need not automatically result in KLG.

We are unpersuaded by Lucy's claim the trial court erred in accepting Tonya's firm stance regarding KLG versus adoption.  The law provides that "[t]he decision of a resource parent to choose adoption over KLG must be an informed one."  N.J. Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246, 260 (App. Div. 2019).  "The caregiver's consent to adopt should be not only informed, but also unconditional, unambiguous, and unqualified."  Id. at 264.

Tonya has remained steadfast in her position that she wishes only to adopt.  Tonya considered the differences between adoption and KLG on the record and clearly stated why she preferred the former.  Importantly, Lucy has not presented a viable alternative to termination in view of Tonya's unwillingness to accept

KLG. Furthermore, the court appropriately dismissed G.B., finding that he is not a viable alternative for placement.[5]

Finally, with respect to the third prong, Luke argues that the court overstepped its authority during the guardianship trial when it interrupted Tonya's testimony regarding the differences between KLG and adoption. We are unpersuaded. N.J.R.E. 611(a) grants the court "reasonable control over the mode and order of interrogating witnesses" and the presentation of evidence, to prioritize determining the truth and to avoid wasting time. Furthermore, N.J.R.E. 614(b) provides that the trial judge has the right to examine all witnesses. As articulated in State v. Medina, 349 N.J. Super. 108, 130-31 (App. Div. 2002), "[t]he intervention of a trial judge in the questioning of a witness is both a power and duty, and forms part of the judiciary's general obligation to ensure a fair trial."

The record shows the court interrupted Tonya twice—once to correct her misunderstanding of whether Lucy would have control over matters such as administering the children's medication under a KLG, and a second time to correct the suggestion from Molly's Law Guardian that Lucy could make weekly

_____

[5] We note the record shows that none of the children wish to be placed with G.B.

motions to vacate the KLG. Both issues were then explored by counsel. We are satisfied that the court's interjection was a reasonable exercise of its authority under N.J.R.E. 611(a) and 614(b) to ensure a fair hearing.

V.

We turn next to Lucy's contention that the court erred in its assessment of prong four, arguing that the experts did not adequately consider the deficiencies in Tonya's caregiving. Luke also contends the court did not adequately assess the fourth prong.

The fourth prong requires the State to demonstrate by clear and convincing evidence that termination "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). This prong "serves as a fail-safe against termination even where the remaining standards have been met." G.L., 191 N.J. at 609. "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with that parent." E.P., 196 N.J. at 108. "The overriding consideration under this prong remains the child's need for permanency and stability." N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 491-92 (App. Div. 2012). Evaluation of this prong includes

20

considering the harm from severing the children's relationship with the resource parent. D.C.A., 256 N.J. at 27.

In addressing Lucy's and Luke's arguments with respect to the fourth prong, we reiterate that an appellate court's role is to determine whether the Family Part's decision is supported by "substantial and credible evidence." M.M., 189 N.J. at 279 (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). As we have noted, we will not disturb the Family Part's findings "unless they are so 'wide of the mark' that our intervention is necessary to correct an injustice." F.M., 211 N.J. at 448 (quoting E.P., 196 N.J. at 104). Stated another way, "[i]t is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support the decision to terminate parental rights." Id. at 448-49 (citing E.P. 196 N.J. at 104).

Here, the trial court's findings were supported by the opinions expressed by the two experts who testified. David Brandwein, Psy.D., concluded that, while the children had a bond with Lucy, it was not a secure bond because Lucy was incapable of fulfilling parental functions through their adulthood. Dr. Brandwein tied this to the children's need for stability and Lucy's inability to prioritize the children's need for a safe and secure environment long-term.

Notwithstanding Lucy's improvements in certain areas, Dr. Brandwein opined that reunification likely would result in the children's future removal, an outcome he said would be a "psychological blow . . . from which they are unlikely to recover."  Elizabeth Stillwell, Psy.D., offered a similar opinion, stressing that any change in the children's placement would be "extraordinarily impactful" and exacerbate the children's existing emotional and cognitive issues.  We add the record amply demonstrates that the children have experienced ongoing issues due to their time in Lucy's care and the multiple removals.  All three children were diagnosed with adjustment disorder associated with trauma.

While Amy and Molly supported termination and adoption, Luke has consistently maintained his desire to be reunified with his mother.  However, he was not strongly opposed to living with Tonya.  He told the Division he liked living with her, and his therapist said he felt secure with her notwithstanding that he would prefer to reside with Lucy.  Moreover, Luke conditioned reunification with his mother on Mark not living with them.  The court found that evidence presented at trial demonstrates "reasonable suspicions" that Lucy continues to live with and be involved with Mark.

Dr. Stillwell recognized that Luke would have the most difficulty with termination given his preference to be reunified but still concluded that

termination was in his best interests. Dr. Brandwein likewise opined that the children likely would experience a "short-term grief reaction" from termination but maintained that they would suffer the greatest harm from reunification.

VI.

Finally, we address Lucy's contention, raised for the first time on appeal, that the different permanency plans for the three older children and Max will foreclose sibling visits.[6] The question of sibling visitation was not expressly part of the remand. Accordingly, there is a limited record. Dr. Stillwell opined that because Max was in a family placement, the other children will continue to see him, and as we have noted, the court briefly commented on Tonya's willingness to facilitate visitation. However, so far as we can determine, the court made no explicit findings of fact based on evidence in the record on whether and in what circumstances Tonya would agree to sibling visitation.

Because this issue is raised for the first time on appeal, the plain error standard of Rule 2:10-2 applies. Under this standard, a reviewing court assesses whether the unchallenged error was "clearly capable of producing an unjust result." State v. McGuigan, 478 N.J. Super. 284, 300 (App. Div. 2024) (quoting State v. Clark, 251 N.J. 266, 287 (20022)). Cf. State v. Walker, 385 N.J. Super.

---

[6] Luke does not address this argument in his brief.

388, 410 (App. Div. 2006) (noting that reviewing courts frequently decline to consider issues not raised below or properly presented on appeal).

When addressing the fourth prong of the best interests test, courts may consider the disruption that termination would cause to sibling relationships. See In re Guardianship of J.N.H., 172 N.J. 440, 477-78 (2002) (court should have reconsidered fourth prong because foster family "imposed, as a condition of adoption, a complete severance of any connection between [the child] and his now intact birth family"). See also In re Guardianship of Jordan, 336 N.J. Super. 270, 275-76 (App. Div. 2001) (in addressing the fourth prong, the Family Part considered impact on sibling relationship, where father's parental rights were terminated to one child but not the other, and it was unclear how the sibling relationship would continue). Cf. N.J. Div. of Youth & Fam. Servs. v. F.H., 389 N.J. Super. 576, 626-27 (2007) (affirming termination despite the uncertainty of whether the siblings, who were in different placements, would have post-adoption contact).

We note that siblings have a right to visitation under the Grandparent and Sibling Visitation Statute, N.J.S.A. 9:2-7.1. Thus, if the family is unable to arrange visits, the children may petition for visits under this statute. In these circumstances, we conclude Lucy's newly raised contention does not change the

24

fact that there is ample support for the trial court's overall finding under the fourth prong. If, as Lucy's argument assumes, Tonya proves to be unwilling to allow sibling visitation, there remains a statutory path to authorize post-adoption visitation.

In sum, we are satisfied that the trial court did not abuse its discretion in accounting for the best interests of the children and their need for permanency and stability. To the extent we have not specifically addressed them, any remaining arguments raised by Lucy and Luke lack sufficient merit to warrant discussion. R. 2:11-3(e)(2)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

25